UNITED STATES of America, Appellee,

v.

Howard G. REAMER, Appellant.

No. 77-1351.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 6, 1978.

Decided Dec. 22, 1978.

Michael E. Marr, Baltimore, Md. (Mark E. Mason, Sutley & Marr, Baltimore, Md., on brief), for appellant.

Joshua R. Treem, Herbert Better, Asst. U. S. Attys. (Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and WIDENER and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

Howard G. Reamer, a practicing attorney in Baltimore, Maryland, was convicted on ten counts of mail fraud in violation of 18 U.S.C.A. § 1341, on charges that he operated a scheme to defraud insurance companies in the settlement of automobile accident claims. He objects primarily to the district court's instructions to the jury that if it found from the evidence that defendant (i) had attempted to suppress evidence or (ii) had knowingly violated the Maryland barratry statute [1] or the professional code of ethics incident to the submission of false medical reports, then it could consider such findings as probative of defendant's criminal intent. We affirm.

This scheme was considered in *United States v. Perkal,* 530 F.2d 604 (4th Cir.) *cert. denied,* 429 U.S. 821, 97 S.Ct. 70, 50 L.Ed.2d 82 (1976), and involved three parties: (1) a "runner" who contacts injured parties and refers them to the doctor or the lawyer; [2] (2) the doctor who sees the claimants and prepares reports of their alleged injuries and bills for medical services; [3] and (3) the lawyer who, representing the claimants, submits to the insurance carrier the exaggerated medical bills and reports and makes settlement on the basis of such inflated bills and reports, dividing the proceeds among the claimants and the parties to the scheme.

During the investigation, postal inspectors obtained sworn statements from certain of defendant's clients to prove the falsity of the medical bills and reports specified in the indictment. Subsequently, but before trial, some of these persons were personally interviewed by the defendant. When called upon to testify each client who had been so interviewed by the defendant disavowed the statements given to the postal inspectors.

Because of this pattern—Reamer's pretrial interviews with witnesses and each one's subsequent failure of memory at trial—the government requested and the court gave an instruction on the suppression of evidence, as a matter for the jury to consider on the issue of criminal intent.

■ We think there was ample evidence to support the court's instruction, and it was properly given. The law is well established that, in a criminal case, evidence of a defendant's attempt to influence a witness to testify regardless of the truth is admissible against him on the issue of criminal intent. *See Wilson v. United States,* 162 U.S. 613, 620–21, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); *United States v. Jamar,* 561 F.2d 1103, 1106–07 (4th Cir. 1977). Therefore, we think the court properly instructed that, if the jury found that the defendant attempted to suppress evidence, it could consider such evidence against him on the issue of consciousness of guilt. *See Allen v. United States,* 164 U.S. 492, 498–500, 17 S.Ct. 154, 41 L.Ed. 528 (1896); 1 Devitt and

---

1. Md.Code Ann. art. 27 § 13 (1976 Repl. Vol.)

2. The defendant paid one runner the sum of $14,920 for the referral of about 100 cases over a five month period.

3. The record indicates that several doctors participated. Dr. Perkal, who testified for the government in this case was convicted for his participation. *Perkal, supra.*

Blackmar, *Federal Jury Practice and Instructions*, 3rd Ed. § 15.09.

Also, on the issue of criminal intent, the court instructed that state law and the code of professional conduct prohibit the solicitation of clients by attorneys, and the standards for violation of the professional code were read to the jury. The court concluded its charge with the admonition that defendant was not on trial for any conduct not alleged in the indictment. We think this latter instruction was supported by the evidence and was properly given. *See U. S. v. Keane*, 522 F.2d 534, 553–57 (7th Cir. 1975), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976).

Defendant also raises as an issue in his appeal the district court's refusal to allow his proffer of similar act evidence, which he contended would support his defense of good faith by contradicting the testimony of participating doctors, to the effect that, in their dealings with defendant, he knew their bills were inflated. The proffer consisted of a number of Dr. Perkal's files which had not been backdated to show consultations occurring soon after the claimants' injury. Dr. Perkal was only one of three doctors who testified against defendant. Dr. Perkal testified that he falsified his files by noting fictitious injuries and treatments, and his files were, in fact, rarely backdated. We think the limited purpose of the proffer and the extrinsic proof required for it made its admission or exclusion entirely a matter of discretion for the court.

Finding no error in the various issues raised on appeal, the judgment of conviction is

*AFFIRMED.*